394

## GANDARA v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit.
June 17, 1929.

No. 5483.

James D. Barry, of Tucson, Ariz., Fryer & Cunningham, of El Paso, Tex., and Edward I. Barry, of San Francisco, Cal., for plaintiff in error.

John C. Gung'l, U. S. Atty., and Clarence V. Perrin, and Frederic G. Nave, Asst. U. S. Atty., all of Tucson, Ariz., for the United States.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

WILBUR, Circuit Judge. The plaintiff in error was convicted of violating the provisions of the Criminal Code, Rev. Stat. § 5286 (vol. 18 USCA § 25). A group of from 20 to 150 armed Yaqui Indians, who had been engaged with several thousand other Yaqui Indians in an insurrection in Mexico, which had been in progress for several years, came to Tucson, Ariz., to secure arms and ammunition and to return to resume hostilities.

Plaintiff in error furnished them arms and ammunition to return to Mexico and to continue their operations against the Mexican government. He contends that, inasmuch as the rebellion was already in progress in Mexico and the Yaqui Indians came to this country for the purpose of securing arms and returning to continue their operations, the expedition did not begin at Tucson, Ariz., nor was it to operate from that place;

in short, that the expedition began in Sonora, Mexico, and was to operate there. He relies upon the authority of U. S. v. Trumbull (D. C.) 48 F. 99, which dealt with the case of a Chilian vessel, the Itata, sent by the Congressional party of Chili to the United States to procure ammunition and supplies for its military force operating in Chili. The plaintiff in error asked for an instruction to the jury in line with his theory of the case to the effect that, if the revolution was already in progress and if all the Indians who had entered the United States came for the purpose of securing ammunition and supplies and returning to Mexico with such supplies to resume their hostile operations, it was no violation of the statute in question for the plaintiff in error to furnish military supplies to them. The requested instruction is as follows: "The jury are instructed, if prior to the commission of any of the acts charged in the indictment, a revolution or revolt of the Yaqui Indians was in existence in the Republic of Mexico in which armed forces of the said Indians were in conflict with the military forces of the Mexican government, and if members of such armed forces of the Yaqui Indians came to the United States for the purpose of securing munitions of war and provisions, and then returning to rejoin the forces of such Indians in Mexico, and the defendant Gandara furnished ammunition or provisions only for such Indians as had come from Mexico, and intended to return to Mexico, and not to recruit or secure other Indians to go to Mexico, then such furnishing of ammunition and provisions would not constitute either a military enterprise or a military expedition as those terms are used in the statute of the United States on which this prosecution is based, and the defendant, Gandara, would not be guilty of beginning, setting on foot, or furnishing means for any military expedition or military enterprise, and a conspiracy merely to furnish ammunition and provisions to Yaqui Indians who had come from Mexico and were intending to return to Mexico under the circumstances above mentioned, would not be an offense against the United States." This instruction was refused.

Throughout the instructions to the jury the court ignored the contention of the plaintiff in error that, if the parties to whom he furnished ammunition and arms were already in rebellion against the Mexican government and their flight to the United States was for the sole purpose of securing ammunition and returning therewith to Mexico, the plaintiff in error was not guilty.

The question thus presented by the record is whether or not the return of the Yaqui Indians to Mexico with arms and ammunition procured in Tucson constituted a military expedition or enterprise to be carried on from Arizona against the Mexican government. If so, although the plaintiff in error may not have begun the expedition or set it on foot, or begun or set on foot the revolution or rebellion in Mexico, he did knowingly provide means for this particular expedition or enterprise in violation of the statute. It is clear that the enterprise or expedition was to be carried on from Tucson, Ariz., against the Mexican government for the reason that the Yaqui Indians, in leaving the territory of Mexico, ipso facto abandoned their operations against the Mexican government and could only resume them after their return with means to be obtained in the state of Arizona. Their intent to return to that nation for the purpose of further hostilities did not alter the fact that they ceased to exist as a military force upon entering the United States. The expedition, when it entered the United States, was headed in the wrong direction to engage in hostilities in Mexico. The retreating Yaqui Indians were powerless to operate as a military force from Sonora, or from their bases in Mexico; it was only by finding a new source of supplies or a new base that they could become a military expedition. That proposed base was Tucson, Ariz. If and when they secured such means, their return as an organized unit constituted a military expedition from our neutral territory within the meaning of the law, regardless of whether or not they intended themselves to attempt to overturn the government of Mexico or join other forces engaged in that effort.

In the case of Trumbull v. United States, supra, in dealing with the proof offered to show a violation of section 5286 of the Revised Statutes, cited above as section 25, vol. 18 USCA, Judge Ross said: "If the evidence shows that in this case there ever was any military expedition begun or set on foot, or provided or prepared for, within the sense of this statute, it was begun, set on foot, provided and prepared for in Chili, and was to be carried on from Chili, and not from the United States. But I think it perfectly clear that the sending of a ship from Chili to the United States, to take on board arms and ammunition purchased in this country, and carry them back to Chili, is not the beginning, setting on foot, providing or preparing the means for any military expedition or enterprise, within the meaning of section 5286 of the Revised Statutes."

Obviously such is not the case here. We cannot extend the principle of that case to the situation here where the Yaqui Indians who came to this country had exhausted their military power, and had fled from the scene of battle to obtain new means for the resumption of hostilities after their return. To knowingly furnish such means for the express purpose of such enterprise was to equip an expedition to be operated from our neutral territory. There was no error in refusing the proposed instruction.

The plaintiff in error attacks the sufficiency of the indictment for the first time in this court. The only question that can be thus presented is the objection that some substantial element of the crime has been omitted from the indictment. Berry v. U. S. (C. C. A.) 259 F. 203. A fair construction of the indictment as a whole covers the offense of which the plaintiff in error was found guilty.

Judgment affirmed.

DIETRICH, Circuit Judge. I concur in the conclusion reached, but I do not think we should assume as admitted some of the facts stated as the basis thereof. Under the evidence, whether there was to be a military expedition or enterprise carried on from Arizona, or whether there was contemplated any organization in or expedition from the United States at all was an issue of fact. If individual Indians straggled in from Mexico for the purpose of remaining here an indefinite time and procuring ammunition and clothing for themselves with the hope of thereafter returning to Mexico and if defendant thereupon sold to them individually such supplies and did nothing more, it probably would not be contended that he would be guilty of the charge. And had the requested instruction been more carefully qualified to cover such a theory of defense, its refusal I think would constitute error. But the request made was too sweeping. Assuming the existence of all the conditions specified in it, defendant might or might not be guilty of the charge, depending upon the existence or nonexistence of other circumstances which were not excluded by the request. The mere fact that a rebellion or revolt had been in progress prior to the alleged misconduct of appellant and that participants therein fled to this country with the hope of some time returning and again engaging in the struggle is not conclusive in defendant's favor. Assuming, as some of the evidence tends to show, that they straggled in either individually or in small groups without organization or leadership, expecting at some time in the

future, when and if they procured the necessary clothing, arms, and ammunition, to return and continue the rebellion, and that appellant, knowing of these conditions and expectations, gave assistance by assembling for them large quantities of ammunition and furnishing them with clothing and other supplies, and by meeting and talking with them encouraged them to keep up the struggle, and assisted them in making preparations to go back for military purposes in a body or in large groups taking with them the military stores he had enabled them to assemble, he might be held chargeable under the law though no new recruits were enlisted. To use United States territory for such purposes would be within the mischief of the statute; the enterprise would be of a military character, and new, although made up of old elements.

RUDKIN, Circuit Judge, concurs in these views.